IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| JEFFREY L. BRUMBALOW, : <br> As Heir at Law of Deborah Sue : <br> Brumbalow, : <br>   : <br>   Plaintiff, : <br>   : <br> v. : <br>   : <br> CORPORAL TRENT TAYLOR, : <br>   : <br>   Defendant. : | CIVIL ACTION NO. <br> 2:10-CV-00001-RWS |

**ORDER**

This case is before the Court for consideration of Defendant's unopposed Motion for Summary Judgment [18]. After reviewing the record, the Court enters the following Order.

**Factual Background**[1]

On November 1, 2007, Defendant Trent Taylor ("Taylor"), who was employed by the Barrow County Sheriff's Office and held the rank of corporal, heard a radio dispatch concerning a suicide attempt at 861 Briscoe Mill Road,

---

[1] The Factual Background is taken from Defendant's Statement of Material Facts to Which There Exists No Genuine Issue to be Tried [18-6] to which Plaintiff filed no response. Therefore, the facts set out therein are deemed to be admitted.

AO 72A
(Rev.8/82)

Bethlehem, Georgia. Taylor was familiar with the address from having responded to other calls at that location. Taylor heard Deputy James Briscoe ("Briscoe") respond to the call, and Taylor directed Deputy Shayne Hunnicutt ("Hunnicutt") to go to the location to assist.

The radio dispatcher advised Briscoe that a suicidal female at the address, who was later identified as Deborah Brumbalow ("Brumbalow"), had taken a handful of pills and had threatened to kill herself. Upon arriving at the address, Briscoe talked to the caretaker for Brumbalow's elderly mother, and the caretaker told him that Brumbalow had taken a large number of pills. Briscoe heard Brumbalow inside the house stating that she was not going back to the "nut house" and that she wanted to die and go to hell. Briscoe told Brumbalow that the deputies were there to try to help her, but she continued to be belligerent and agitated. Brumablow stated that she had a knife and wanted to kill herself. Briscoe saw that Brumbalow had a folded pocket knife attached to her waist.

When Hunnicutt arrived to assist Briscoe, Brumbalow pulled the knife out, held it in her hand, and stood behind her mother who was sitting in a brown recliner. Brumbalow again threatened to kill herself. The deputies drew

2

AO 72A
(Rev.8/82)

their weapons and ordered Brumbalow to put the knife down. At that point, Brumbalow stated that she had a gun too.

Briscoe contacted Taylor via telephone and told Taylor that the subject of the suicide attempt had pulled a knife. Taylor went to the scene to assist as did Captain James Scott ("Scott"), who arrived immediately behind Taylor.

While Deputies Briscoe and Hunnicutt were still at the front door, Brumbalow reached down and picked up a hammer. The deputies kept their weapons drawn. Brumbalow ultimately dropped the hammer but when the elderly woman stood up near Brumbalow, Brumbalow pulled the knife back out and put it to her wrist threatening to kill herself. At about this time, Taylor and other deputies arrived and went to the front door. Brumbalow stated that she was going to get a gun and began running toward a back bedroom. Taylor yelled out, "Don't let her get to the bedroom," and deputies rushed inside the residence.

Brumbalow's elderly mother got in the deputies way as they tried to come in. By the time they got in the residence, Brumbalow had made it into the bedroom and out of sight of the deputies. Taylor began maneuvering down the hallway toward the bedroom where Brumbalow had run. Taylor was ultimately

able to see Brumbalow standing the bedroom, near the doorway, holding a long gun or rifle in her hands. Taylor told everyone that she had a gun and the deputies tried to seek cover.

Taylor and Scott began instructing Brumbalow to put the gun down and come out, but she did not do as instructed. After a couple of minutes, Brumbalow came out of the bedroom with the gun and pointed it directly at Taylor. When Taylor saw that Brumbalow had the gun pointed directly at him, he fired his weapon at Brumbalow and she fell to the ground. When Brumbalow came out of the bedroom and pointed the gun in Taylor's direction, Taylor was placed in immediate fear of being killed or seriously injured, and he fired his weapon to try to eliminate the danger to himself and his fellow deputies. Two shots apparently hit Brumbalow. EMS personnel on the scene came to Brumbalow, and she was treated and taken to Grady Hospital. Brumbalow was admitted to the hospital and treated for several days. On November 4, 2007, Brumbalow died. Medical records show that Brumbalow went into respiratory failure, and that she was found to have "metabolic acidosis likely due to her mal perfusion along with her substance overdose." The records show that she had taken approximately 100 pills of Cymbalta,

AO 72A
(Rev.8/82)

Trazodone, and Hydrocodone. Brumbalow was pronounced dead with the diagnosis of cardiovascular collapse and medication overdose.

On October 30, 2009, Jeffrey L. Brumbalow, as heir-at-law of Deborah Sue Brumbalow filed this action in the Superior Court of Barrow County for wrongful death and violation of civil rights. On January 4, 2010, Defendant removed the action to this Court. Defendant filed a Motion for Summary Judgment [18] on December 13, 2010. Plaintiff has filed no response to the Motion for Summary Judgment.

## Discussion

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"

5

AO 72A
(Rev.8/82)

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

6

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

In his Complaint, Plaintiff asserts a cause of action against Defendant Taylor pursuant to 42 U.S.C. § 1983 for violation of the civil rights of Deborah Sue Brumbalow under the color of state law. "In order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).

7

Defendant Taylor asserts that he is entitled to qualified immunity for this cause of action. Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. Wilson v. Layne, 526 U.S. 603, 609 (1999). Public officials are shielded under qualified immunity so far as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law for the court. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

The Eleventh Circuit utilizes a two-part analysis for the defense of qualified immunity. First, the defendant official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995). If the defendant meets this burden, the plaintiff must then demonstrate that the defendant violated clearly established law based upon objective standards. Id.

The Court finds that the first element of the test is clearly met in that Defendant Taylor was acting within his discretionary function as a public official at the time alleged in the Complaint. The only remaining question

before the Court is whether Taylor's actions violated clearly established law. The Court finds that they did not. At the time of the incident, Defendant Taylor had been informed that Brumbalow had threatened to kill herself and was wielding a knife. He was also informed that she had taken a number of pills. Taylor hear Brumbalow state that she was going into her bedroom to get a gun and saw her run toward a back bedroom. After entering the residence, Taylor hear Brumbalow threaten to kill herself and saw Brumbalow with a gun in her hand. Brumbalow walked out of the bedroom and pointed the gun directly at Taylor. Taylor had objective reasonable grounds to fear for his life and the lives of others.

"The Fourth Amendment protects individuals from 'unreasonable' seizures. Deadly force is 'reasonable' for purposes of the Fourth Amendment when an officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir. 2005)(internal citations and quotations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at n. 4. Under the circumstances of this

9

case, the Court finds that Defendant Taylor's actions did not violate clearly established law.

Plaintiff also asserts a state law wrongful death claim against Defendant Taylor. As to this claim, Plaintiff asserts that he is entitled to official immunity. The Georgia Constitution provides that state officers and employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in performance of their official functions." Ga. Const. Art. I, §2, ¶ IX (d). The Court has found that Defendant Taylor was acting in the performance of his discretionary duties as a state official at the time of the incident which gave rise to this action. Thus, to pierce his official immunity, Plaintiff must demonstrate that he acted with actual malice. Adams v. Hazelwood, 271 Ga. 414, 520 S.E.2d 896, 898 (1999). The Supreme Court of Georgia has explained that "'actual malice' requires a deliberate intention to do wrong and denotes 'express malice or malice in fact.'" Id. (quoting Merrow v. Hawkins 266 Ga. 390, 467 S.E.2d 336, 338 (1996)) No evidence has been presented that would support a finding of actual malice on the part of Defendant Taylor. On the contrary, the uncontradicted evidence is that Defendant Taylor believed that his actions were necessary to prevent death or serious injury to

10

AO 72A
(Rev.8/82)

himself or to others. Therefore, Defendant Taylor is entitled to official immunity for the state law claim.

## Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment [18] is hereby **GRANTED**.

**SO ORDERED**, this   25th   day of January, 2011.

*[signature]*

**RICHARD W. STORY**
United States District Judge